DECISION
{¶ 1} Appellant, Brian Weightman, appeals from a judgment of the Franklin County Court of Common Pleas, Probate Division, granting the petition for adoption that appellee, Daniel Gatley, filed. Appellant assigns a single error:
{¶ 2} "THE TRIAL COURT ABUSED ITS DISCRETION IN OVERRULING OBJECTIONS TO THE MAGISTRATE'S DECISION DETERMINING IT IS IN THE BEST INTEREST OF THE MINOR THAT THE PETITION BE GRANTED."
{¶ 3} Because the probate court did not abuse its discretion in adopting the magistrate's decision to grant appellee's petition for adoption, we affirm.
{¶ 4} On February 27, 1998, appellee filed a petition for adoption of B.G., with the consent of B.G.'s mother, appellee's wife. On April 9, 1998, a home study report was filed, recommending the adoption be granted. On April 13, 1998, appellant, the natural father, consented to the adoption but, on May 4, 1998, appellant attempted to withdraw his consent. A hearing was held in the probate court and the magistrate issued a decision that appellant's attempt to withdraw his consent be denied. The probate court overruled appellant's objections and adopted the magistrate's decision. This court affirmed on appeal.
{¶ 5} On remand, a hearing was held on May 29, 2001, to determine whether the adoption should "take place and terminate the relationship between the child and the grandparents." (Tr. 5.) After hearing the testimony of appellee, his wife and the child's natural mother, the child, and appellant's mother, the magistrate issued a decision that the adoption be granted. Appellant's parents, the paternal grandparents, filed objections to the magistrate's decision. On June 27, 2002, the probate court overruled all but one objection, not relevant to the issue to be determined in this appeal, and granted the petition for adoption.
{¶ 6} On July 26, 2002, appellant filed a notice of appeal from the probate court's judgment entry granting the petition for adoption. In his brief filed with this court, appellant asserts the probate court abused its discretion in granting the adoption, as the adoption terminates the paternal grandparents' relationship with his daughter.
{¶ 7} Before addressing the merits of the matter before us, we note Civ.R. 53(E)(3)(a) provides that within "fourteen days of the filing of a magistrate's decision, a party may file written objections to the magistrate's decision." Moreover, Civ.R. 53(E)(3)(b) states that a "party shall not assign as error on appeal the court's adoption of any finding of fact or conclusion of law unless the party has objected to that finding or conclusion under this rule."
{¶ 8} Here, although the magistrate in the probate court determined the paternal grandparents lacked standing to challenge the petition for adoption, they nonetheless filed objections to the magistrate's decision; appellant did not. Because the paternal grandparents are not attempting to appeal the probate court's determination, their having filed objections does accrue to appellant's benefit in this appeal. Rather, because appellant failed to file objections in the probate court, appellant waived any error in the probate court's findings of fact or conclusions of law. Moreover, because no error of law or other defect is apparent from the magistrate's decision, the judgment of the probate court properly may be affirmed under Civ.R. 53(E)(4)(a).
{¶ 9} Nonetheless, because the issues raised in this appeal are of considerable importance to the persons involved, we address the merits of the probate court's determination to grant the petition for adoption.
{¶ 10} Former R.C. 3107.14(C) permits the probate court to issue a final decree of adoption if the court obtains the necessary consent and if the adoption is in the best interests of the person to be adopted. R.C. 3107.161 sets forth the relevant factors the probate court should consider concerning the best interests of the child. Of the various factors to be considered under R.C. 3107.161 in determining the best interests of the child to be adopted, only four are pertinent here:
{¶ 11} "(B)(1) The least detrimental available alternative for safeguarding the child's growth and development;
{¶ 12} "* * *
{¶ 13} "(3) The wishes of the child in any case in which the child's age and maturity makes this feasible;
{¶ 14} "* * *
{¶ 15} "(7) The importance of providing permanency, stability, and continuity of relationships for the child;
{¶ 16} "(8) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest[.]"
{¶ 17} R.C. 3107.161(B)(7) and (8) deal primarily with the family in which the child to be adopted is living, and the relationship the child to be adopted has with those whose rights will be terminated by an adoption. B.G. is fortunate in that examination of both factors reveals positive influences in her life. The testimony before the probate court reflects that appellee is the only father B.G. has known. B.G. has three half-siblings, the product of the marriage of appellee and B.G.'s natural mother; appellee treats B.G. as he treats his own children. The family enjoys recreation together, appellee plays with B.G., and appellee coaches her softball team. B.G. is well acclimated to the family, and loves appellee; appellee loves B.G. She attends a parochial school where she does well. While a change of jobs has in the short run led appellee and his wife to file bankruptcy proceedings, in the long run, the change in employment should financially benefit the entire family.
{¶ 18} At the same time, B.G. has paternal grandparents who have taken an active role in her life, to the point of seeking court-ordered visitation to ensure their involvement. At the time of the hearing in the probate court, the paternal grandparents had weekend visitations in Ohio every eight weeks, and B.G. visited for seven days in June and nine days in August each summer. In addition, B.G. telephoned her paternal grandparents once a week and spoke with them for a minimum of five minutes. While B.G. was in Florida visiting her paternal grandparents, she also came to know her aunt and uncle, as well as a cousin close to her own age. B.G.'s paternal grandparents have indicated an interest in assisting with the financial obligation for her parochial education, and have begun an annuity to assist with her college expenses.
{¶ 19} B.G. testified to her own desire. She very much wants to be adopted by appellee, to have his last name and the same name as her siblings, and to be a full member of the family unit she has come to know. She resists visitation in Florida because she misses her family, her friends, and her activities in Ohio. She resists calling her paternal grandparents, and her mother and appellee frequently force her to fulfill that obligation. She admits to having fun with her paternal grandparents sometimes, but also adds that sometimes they are "mean" to her. Photographs discussed during the hearing before the magistrate reveal enjoyable times B.G. has spent with relatives of her natural father.
{¶ 20} While appellant discounts B.G.'s own wishes as immature, especially in that they appear to place sporting events over an ongoing relationship with the paternal grandparents, the child's testimony reflects her own feelings about that relationship. Were the relationship stronger, it might outweigh B.G.'s fear of missing some sporting event in which she is involved. The fact that the relationship does not outweigh her interest in being with her family and friends and being involved in her social activities may speak to not her immaturity, but the nature of her relationship with her paternal grandparents. Accordingly, despite appellant's contentions to the contrary, we cannot find the probate court abused its discretion in considering the wishes of the child.
{¶ 21} The last consideration is the least detrimental available alternative for safeguarding the child's growth and development. Pursuant to R.C. 3107.161, that means "the alternative that would have the least long-term negative impact on the child." Here, the probate court was required to choose between allowing B.G. to be fully integrated into the only family unit she has known, and thus to potentially terminate her relationship with her paternal grandparents, or to allow her relationship with her paternal grandparents to continue with the result that B.G. would not be able to enjoy precisely the same relationship with appellee that her half-siblings do. While we do not suggest the choice is an easy one, we cannot say the probate court abused its discretion in determining that adoption is in the best interests of B.G. This court would be hard-pressed to exaggerate the significance of B.G.'s family unit in her life. Although denial of the adoption does not mean that that life would cease to exist, B.G. is aware of the differences that accrue with adoption, and wants them. The day-to-day influence in her life from an adoptive father outweighs the not insubstantial benefits that accrue to her through her continuing relationship with her paternal grandparents.
{¶ 22} Appellee testified in the hearing before the magistrate that he intended to continue the relationship between B.G. and her paternal grandparents. B.G. herself expressed a desire to continue the relationship in Ohio. While the evidence reflects, as the home study recommended, that adoption is in the best interests of B.G., B.G.'s relationship with her paternal grandparents likewise is of significance and we, for the sake of B.G., urge the adults involved in her life to consider that as well.
{¶ 23} Given the evidence before the probate court, however, we overrule appellant's single assignment of error and affirm the judgment of the probate court.
Judgment affirmed.
TYACK, P.J., and PETREE, J., concur.